IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Frankie Carl and Destiny Adams, ) | C/A No. 4:20-cv-00640-DCC |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Mazda Motor Corporation; Mazda Motor ) | |
| of America, Inc.; Daicel Corporation; ) | |
| Daicel Safety Systems, Inc.; Daicel ) | |
| America Holdings, Inc.; Daicel Safety ) | |
| Systems America, LLC; Daicel Safety ) | |
| Systems America Arizona, Inc.; Special ) | |
| Devices, Inc.; Ashimori Industry Co., ) | |
| Ltd.; Takata Corporation; TK Holdings ) | |
| Inc.; Highland Industries, Inc.; Key ) | |
| Safety Systems, Inc.; Autoliv, Inc.; ) | |
| ZF TRW Automotive Holdings Corp; ) | |
| Apex Automotive, LLC; Fredrick Bryant; ) | |
| Catina Brown, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter comes before the Court on Defendant Mazda Motor of America, Inc's ("Mazda Motor") Motion to Dismiss for lack of personal jurisdiction. ECF Nos. 8, 17. Plaintiffs filed a Response in Opposition, and Mazda Motor filed a Reply. ECF Nos. 85, 88.

**BACKGROUND**[1]

On or about February 16, 2018, Plaintiff Frankie Carl, the owner and driver of a 2006 Mazda Tribute, was traveling northbound on US-701. ECF No. 1 ¶ 29. Plaintiff Destiny Adams was a passenger in Plaintiff Carl's vehicle. At the same time, Defendant

---

[1] The Court's recitation of the factual allegations is taken from the Complaint.

1

Fredrick Bryant was the operator of a 2004 Honda Civic, owned by Defendant Catina Brown, and was traveling northbound on US-701. *Id.* ¶ 30. Plaintiff Carl slowed her vehicle to complete a left turn onto Secondary 36. *Id.* ¶ 31. Defendant Bryant was following too closely; he failed to slow and stop behind Plaintiffs and collided with the vehicle. *Id.* ¶ 32. The vehicle driven by Defendant Bryant collided with the side of Plaintiff Carl's vehicle. The force of the impact caused Plaintiff Carl's vehicle to strike a ditch before striking a roadside utility pole head on. The passenger side airbags failed to deploy upon the force of the impact. *Id.* ¶ 35. The significant force of the impact with the pole should have caused the airbags to deploy but they failed to do so. *Id.* ¶ 33. The impact caused by the collision resulted in substantial injuries to Plaintiffs. *Id.* ¶ 34. The failure of the airbags to deploy exacerbated the Plaintiffs' injuries. Plaintiff Carl did not cause the collision.

Plaintiffs allege that Mazda Motor, among other Defendants, manufactured, inspected, distributed, and/or sold the 2006 Mazda Tributes and/or their component parts, placing the defective products into the stream of commerce. They contend that the products and/or their component parts were defective and unreasonably dangerous to the user or consumer. *Id.* ¶ 38. Plaintiffs assert that Mazda Motor and other Defendants manufactured and distributed the products and/or their component parts in a defective condition and failed to adequately warn of the inherent dangers in their defective products and/or component parts. *Id.* ¶¶ 39, 42. Plaintiffs allege that as a direct and proximate result of the defective goods and/or the component parts placed into the stream of commerce by Mazda Motor and other Defendants and their negligence, gross negligence,

negligence per se, negligent entrustment and shaken faith, Plaintiffs suffered permanent and debilitating injuries, including but not limited to significant bodily injury, resulting pain and suffering, physical impairment, mental anguish, and loss of enjoyment of life. *Id.* ¶ 43.

Plaintiffs filed the Complaint on February 5, 2020.  ECF No. 1.  On April 10, 2020, Mazda Motor made a limited appearance and filed its Motion to Dismiss.  ECF No. 8.  On May 18, 2020, Plaintiffs filed a Motion to Stay as to the Motion to Dismiss.  ECF No. 37.  The Court issued an Order extending the time to file a response to the Motion to Dismiss until after the Court ruled on the Motion to Stay.[2]  On October 20, 2020, the Court denied the Motion to Stay and directed Plaintiffs to respond to the Motion to Dismiss by November 3, 2020.  Thereafter, Plaintiffs filed a Response in Opposition, and Mazda Motor filed a Reply.  ECF Nos. 85, 88.

## **APPLICABLE LAW**

When a defendant challenges the Court's personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden of proving that jurisdiction exists by a preponderance of the evidence.  *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997).  "If the existence

---

[2] Within their Motion to Stay, Plaintiffs requested permission to engage in jurisdictional discovery.  ECF No. 37.  On June 23, 2020, the Court directed Plaintiffs to submit proposed interrogatories and requests to admit.  ECF No. 62.  Upon review of their submission, the Court determined that jurisdictional discovery would be futile with respect to Mazda Motor and directed Plaintiffs to file a response to the Motion to Dismiss.  *See* ECF No. 81; *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 402–03 (4th Cir. 2003) (holding that district courts have broad discretion in resolving discovery disputes and that "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery").

of jurisdiction turns on disputed factual questions[,] the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). However, when "a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *In re Celotex Corp.*, 124 F.3d at 628 (quoting *Combs*, 886 F.2d at 676). "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993)). Additionally, "'[i]n reviewing the record before it, a court may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'" *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306 (D.S.C. 1992) (quoting *VDI Techs. v. Price*, 781 F. Supp. 85, 87 (D.N.H. 1991)).

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. Fed. R. Civ. P. 4(k)(1)(A). Thus, "for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with

4

Fourteenth Amendment due process requirements." *Christian Sci. Bd. of Dirs. of First Church of Christ, Sci. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citing *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 134 (4th Cir. 1996)).

South Carolina's long-arm statute provides as follows:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's: (1) transacting any business in this State; (2) contracting to supply services or things in the State; (3) commission of a tortious act in whole or in part in this State; (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; (5) having an interest in, using, or possessing real property in this State; (6) contracting to insure any person, property, or risk located within this State at the time of contracting; (7) entry into a contract to be performed in whole or in part by either party in this State; or (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803(A). "South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (citations omitted). "Consequently, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Id.* (quoting *Stover*, 84 F.3d at 135–36). The central constitutional question the Court must address is whether the defendant has established "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v.*

5

*Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Viewed through this constitutional lens, personal jurisdiction may arise through specific jurisdiction, which is based on the conduct alleged in the lawsuit, or through general jurisdiction. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). Under general jurisdiction, when a defendant has "continuous and systematic" contacts with the forum state, the defendant "may be sued in [the forum] state for any reason, regardless of where the relevant conduct occurred." *Id.* (citations omitted). When the defendant is a corporation, "general jurisdiction requires affiliations 'so continuous and systematic as to render [the foreign corporation] essentially at home in the forum State,' *i.e.*, comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 159 n.11 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

In contrast, under specific jurisdiction, a defendant may be sued in this Court if the litigation results from alleged injuries that arose out of or related to their contacts with South Carolina and those contacts were sufficient. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). To determine whether specific jurisdiction exists, courts employ a "minimum contacts" analysis that examines: "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotations omitted). This analysis focuses on the relationship between the defendant,

the forum, and the litigation; therefore, the Supreme Court has emphasized "[t]wo related aspects of this necessary relationship." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* (internal quotation omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Second, [the] minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (internal quotation omitted) (citing *Int'l Shoe Co.*, 326 U.S. at 319).

## ANALYSIS

As set forth above, personal jurisdiction may lie where a court has either general or specific jurisdiction over a defendant. In its Motion to Dismiss, Mazda Motor contends that the Court has neither general nor specific jurisdiction. The Court turns first to general jurisdiction.

***General Jurisdiction***

In recent years, the Supreme Court has significantly narrowed the reaches of general personal jurisdiction. In *Daimler AG v. Bauman*, the Supreme Court clarified that general jurisdiction over corporate defendants will only exist in three circumstances: (1) in the forum where the defendant is incorporated; (2) in the forum where the defendant has its principal place of business; and (3) in a forum where a "corporation's affiliations with the [forum] are so continuous and systematic as to render [it] essentially at home in the forum State." 571 U.S. 117, 138–39 (2014) (internal quotations omitted).

Here, it is undisputed that Mazda Motor is "incorporated under the laws of the State of California and is headquartered in Irvine, California." ECF No. 17 at 2. As such, the only way this Court can have general personal jurisdiction over Mazda Motor is if its

7

contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina.  *See Daimler AG*, 571 U.S. at 139.

To that end, Plaintiffs have alleged that Mazda Motor "is a distributor of motor vehicles and distributes those vehicles with the intentions to conduct substantial business in states other than their home state." ECF No. 85 at 7.  They contend that "by engaging in business in South Carolina with multiple dealerships, [Mazda Motor's] contacts render them at home and subject to the general jurisdiction of this Court." *Id.*  The Court disagrees.

Having reviewed the arguments and submissions of the parties, the Court finds that Plaintiffs have failed to show that Mazda Motor's contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina.  *See Daimler AG*, 571 U.S. at 139.  Mazda Motor provides the affidavit of Crystal Ventura, Assistant Secretary of Mazda Motor.  She avers that Mazda Motor is the authorized distributor of new Mazda-brand vehicles and replacement parts in the Unites States; Mazda Motor does not sell vehicles to individual consumers in South Carolina, has no offices in South Carolina, and does not own any real or personal property in South Carolina.  ECF No. 17.  Ms. Ventura states that in 2018 Mazda Motor sold vehicles to eight authorized Mazda dealerships in South Carolina.  However, distribution of vehicles to a limited number of authorized dealerships is insufficient to give rise to general jurisdiction.  *See Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 134 (4th Cir. 2020) (finding that Marriott had systemic and continuous contacts with South Carolina where 90 of the hotels in the Marriott system were in South Carolina but Marriott did not own any of the hotels; however, the contacts were "not substantial enough to render Marriott essentially

at home in the forum State" (internal quotation marks and citation omitted)); *see also Daimler AG*, 571 U.S. 117 (holding that the California court did not have general jurisdiction where the defendant corporation had multiple California facilities, had a regional office in California, was the largest supplier of luxury vehicles in California, was the exclusive supplier of Daimler-brand vehicles to dealerships in California, received significant revenue from sales in California, and 10% of its sales of new vehicles in the United States took place in California). Accordingly, the Court finds that it does not have general jurisdiction over Mazda Motor. Therefore, the Court turns to the question of specific jurisdiction.

### *Specific Jurisdiction*

Mazda Motor contends the Court lacks specific personal jurisdiction because, inter alia, Plaintiffs' claims do not arise out of or relate to contacts between Mazda Motor and South Carolina. ECF No. 8 at 13. In response, Plaintiffs contend that their "claims are based on the introduction of a vehicle unsafe for its traditional uses into South Carolina's stream of commerce." ECF No. 85 at 9. They assert that Mazda Motor's "relevant conduct in South Carolina is one which would lead the Defendant to believe they could be required to defend an action in South Carolina." *Id*.

To determine whether specific jurisdiction exists, the Court must examine: "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotations omitted). Each prong must be satisfied. *See*

*Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278–79 (4th Cir. 2009). Plaintiffs must show that Mazda Motor did "something more" than place Plaintiffs' vehicle in a stream of commerce which might bring the vehicle into South Carolina for the Court to have specific personal jurisdiction. *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 111 (1987).

Because it is dispositive of the matter, the Court turns to the second prong first. Having reviewed the arguments and submissions of the parties, the Court finds that Plaintiffs have failed to demonstrate that their claims arise out of those activities of Mazda Motor directed at the State of South Carolina. It is undisputed that Plaintiffs' vehicle was not manufactured in South Carolina and that Mazda Motor did not market Plaintiffs' vehicle to or in South Carolina. Plaintiffs' vehicle was designed in Japan and Michigan and manufactured in Missouri by other entities. Mazda Motor distributed the vehicle in Utah, where it was purchased by another consumer in 2006. Eventually, Plaintiff Carl purchased the vehicle from a used car lot in South Carolina. ECF Nos. 1 at 13; 17 at 3–4. Plaintiffs were then in an accident in South Carolina. Such allegations fail to give rise to specific jurisdiction in this Court. *See Walden*, 571 U.S. at 284 (holding that claims to which specific jurisdiction will attach "must arise out of contacts that the 'defendant himself' creates with the forum state" (quoting *Burger King*, 471 U.S. at 475)); *see also Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cnty.*, 137 S.Ct. 1773 (2017) ("[E]ven regularly occurring sales of products in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." (quoting *Goodyear Dunlop Tires Ops. S.A.*, 564 U.S. at 931 n. 6)).

Another court in this district recently examined similar facts in *Wallace v. Yamaha Motors Corp., USA*, C/A No. 9:19-cv-00730-DCN, 2019 WL 6170419 (D.S.C. Nov. 20, 2019). In that case, the Honorable David C. Norton, United States District Judge for the District of South Carolina, held that the plaintiff's claims did not "arise out of" the defendant's contacts with South Carolina where a motorcycle had been designed and manufactured by a separate entity in Japan, the defendant distributed the motorcycle to a dealership in Kansas, the motorcycle was purchased from a dealership in Kansas by a consumer, and the motorcycle was then brought into South Carolina by actions of third parties. *Wallace,* 2019 WL 6170419, at *4. Judge Norton also considered and rejected the argument that the defendant's marketing, distribution, and sale of the same model of motorcycle in South Carolina met the "arises out of" requirement. *Id.*

Here, Plaintiffs have failed to demonstrate that their injuries arise from or relate to Mazda Motor's contacts in South Carolina. Thus, they have failed to establish that this Court has specific jurisdiction over Mazda Motor and the claims against it must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Mazda Motor's Motion to Dismiss, ECF No. 8, is **GRANTED,** and Plaintiff's claims against Mazda Motor are **DISMISSED without prejudice**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.<br>United States District Judge

December 15, 2020
Spartanburg, South Carolina